NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0781n.06

No. 10-1347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 18, 2012*

LEONARD GREEN, Clerk

LIONEL BEAUCHAMP,

  *Petitioner-Appellant,*

v.

KENNETH MCKEE, WARDEN,

  *Respondent-Appellee.*

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:  COLE and DONALD, Circuit Judges; SARGUS, District Judge.[*]

  COLE, Circuit Judge. Lionel Beauchamp was accused of hiring his cousin, Vaudi Higginbotham, to kill two men who were alleged to have been involved in the theft of Beauchamp's car. Prior to trial, Beauchamp received letters, ostensibly written by Higginbotham, that Beauchamp believes show that Beauchamp was not involved in the killings. Beauchamp's counsel decided not to introduce those letters at trial, and Beauchamp was convicted of first and second degree murder. On direct review, the Michigan Court of Appeals found that the letters would have been inadmissible at trial, and that even if they were admissible, counsel was not ineffective for declining to attempt to introduce them. The district court found that this determination was not an unreasonable

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

application of Supreme Court precedent. We agree, and AFFIRM the district court's dismissal of

Beauchamp's habeas petition for a writ of habeas corpus.

## I. BACKGROUND

*A. Factual Background*

On December 22, 2000, Vaudi Higginbotham shot and killed two men, DuJuan Gilchrist and

Chaz Richards. (Trial Tr., Day 2, R.12-5, Page ID# 438, 111:11-18). Beauchamp, Higginbotham's

cousin, was present at the house at the time of the killings. (*Id*. at Page ID# 375, 48: 14:18). In a

statement given to police a few days after the killings, Beauchamp claimed he saw Higginbotham

shoot Gilchrist while another man, Loyce Pryor, held Gilchrist down, and then Higginbotham shot

Richards as he attempted to flee the scene. (*Id.* at Page ID# 375-76, 48:19- 49:14).

When Higginbotham was questioned by the police, he admitted his role in the killings, but

told investigators that Beauchamp had paid him $500 to kill Gilchrist and Richards. (*Id.* at Page ID#

439, 112:1-8). Higginbotham claimed that Beauchamp ordered the killings in retaliation for

Gilchrist's theft of Beauchamp's car. (*Id.* at 112:11-19). Higginbotham ultimately agreed to plead

guilty to lesser charges, in return for a promise to testify against Beauchamp. (*Id.* at Page ID# 441-

42, 114:7 - 115:21). An arrest warrant was issued for Beauchamp in April 2002 (*id.* at Page ID#

384, 57: 6-8), but Beauchamp was a fugitive for a substantial period of time and was not arrested

until March 2004. (*Id.* at Page ID# 386, 59:6-9).

Prior to trial, Beauchamp's family received two letters allegedly written by Higginbotham.

(*Ginther* Hearing Tr., R.12-15, Page ID# 1064, at 64: 9-21; Page ID# 1067-68, 67:22 - 68:7). The

first letter, received on February 27, 2004, while Beauchamp was on the run, stated that

Higginbotham was considering reneging on his agreement to testify against Beauchamp and encouraged Beauchamp to stay on the run. (Pet. for Writ of Habeas Corpus, R.1, Page ID# 40). In addition, the February letter stated that "I took this deal in the first place, because you left me high and dry" and "[y]ou wouldn't send your dude a wooden nickel." (*Id.*) The second letter, received March 1, 2004, explicitly stated that Beauchamp had no involvement in the killings and apologized for involving him in the affair. Both letters were ultimately forwarded to Beauchamp's counsel. (*Id.* at Page ID# 34).

At trial, counsel argued that Higginbotham fabricated Beauchamp's role in the killings to shield himself from responsibility, that Higginbotham had an independent motive to kill Gilchrist (a rival drug dealer), and that Higginbotham was emotionally unstable and unreliable. Beauchamp's counsel did not, however, attempt to introduce the letters as part of the cross-examination of Higginbotham. The jury convicted Beauchamp of one count each of first and second degree murder, and sentenced him to life in prison.

B. *Proceedings on Appeal*

As part of his direct appeal, Beauchamp requested a hearing, pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), to support the argument that his counsel was ineffective for failing to introduce the letters. During the hearing, Beauchamp's trial counsel testified that they chose not to introduce the letters because they believed their impeachment evidence against Higginbotham was already strong. (*Ginther* Hearing Tr., Volume I, R.12-15, Page ID# 1017, at 17: 21-24). In addition, Beauchamp's counsel expressed concern that the February letter's references to Beauchamp's failure to pay Higginbotham, as well as to Beauchamp's status as a fugitive at the time, would undermine

the defense's case. (*Id.* at Page ID# 1018, 18:15-21; Page ID# 1019, 19:1-16). Finally, Beauchamp's counsel stated that they were unsure how Higginbotham would react to the letters, and feared "opening the door." (*Id.* at Page ID# 1019-20, 19:24 - 20:5). The trial judge found this explanation unpersuasive, and held that Beauchamp's counsel was ineffective for failing to introduce the letters. (*Ginther* Hearing Tr., Volume II, R.12-15, Page ID# 1109, at 22-4-10).

The Michigan Court of Appeals reversed. *People v. Beauchamp*, No. 257025, 2006 WL 657068 (Mich. Ct. App. March 16, 2006). That court held that the letters would not have been admissible, as they were not authenticated as being truly authored by Higginbotham. *Id.* at *2. In addition, even if they could have been authenticated, the court held that the key exculpatory statements would have been offered for the truth of the matter asserted, and thus would be inadmissible hearsay. *Id.* As an alternative holding, the Michigan Court of Appeals found that, even if the letters were admissible, they would not have affected the outcome of the trial in light of the unreliability of witness recantations. *Id.* The Michigan Supreme Court denied leave to appeal. *See* 722 N.W.2d 435 (Mich. 2006).

Beauchamp subsequently filed a petition for a writ of habeas corpus in the Eastern District of Michigan, reasserting this same claim. The district court affirmed the conclusion of the magistrate judge that it was bound by the Michigan Court of Appeal's ruling on the admissibility of the letters. *Beauchamp v. McKee*, No. 07-12509, 2010 WL 376321, at *8 (E.D. Mich. January 26, 2010). As a result, it rejected Beauchamp's claim of ineffective assistance of counsel, *id.* at *9. We granted a certificate of appealability on the following issue only: "whether the state appellate court violated clearly established federal law by reversing the trial court's ruling that defense counsel was

constitutionally ineffective for failing to use exculpatory evidence to impeach testimony of the prosecution's witness."

## II. ANALYSIS

*A. Standard of Review*

"In a habeas proceeding, we review de novo the district court's legal conclusions, including its ultimate decision to grant or deny the writ, and we review for clear error its factual findings." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 365 (6th Cir. 2006). A district court's factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 366 (internal quotation marks omitted) (quoting *Norris v. Schotten*, 146 F.3d 314, 323 (6th Cir. 1998)).

As Beauchamp's conviction became final after April 24, 1996, his petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> Under AEDPA, a federal court may grant a writ of habeas corpus with respect to a "claim that was adjudicated on the merits in state court proceedings" if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A habeas petition may also be granted if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Murphy v. Ohio,* 551 F.3d 485, 493 (6th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Id.* at 493-94 (alterations in original)

(internal quotation marks omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An unreasonable application of federal law is one where the state court either "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," *id.* at 494 (quoting *Williams*, 529 U.S. at 407-08) or "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *id.* (quoting *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000)).

For ineffective assistance of counsel claims, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Matthews v. Parker*, 651 F.3d 489, 507 (6th Cir. 2011) (quoting *Strickland*). The *Matthews* court stated:

> [T]o prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness and that the [petitioner] was prejudiced by the ineffective assistance of counsel. Representation is deficient, under the *Strickland* test, when counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Moreover, to satisfy the prejudice prong of *Strickland*, a petitioner need not show that counsel's deficient conduct more likely than not altered the outcome in the case, rather, only that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 507-08 (internal citations and quotation marks omitted). Thus, a petitioner seeking a writ of habeas corpus based on ineffective assistance of trial counsel must show: (1) that trial counsel's performance was deficient to a constitutionally significant degree; and (2) that the deficient performance had a reasonable probability of altering the outcome of the petitioner's trial.

B. *The Higginbotham Letters*

Beauchamp asserts that his trial counsel was ineffective for failing to introduce the letters at trial. The Michigan Court of Appeals held that the letters would not have been admissible at trial even if Beauchamp's attorneys had attempted to introduce them, for two reasons. *Beauchamp*, 2006 WL 657068, at *2. First, the court found the letters were inadmissible because they were not properly authenticated. This reasoning is circular, as the letters were not authenticated because trial counsel did not seek to introduce them. Presumably, if trial counsel had sought to introduce the letters, they would have at least attempted to authenticate them.

However, the Michigan Court of Appeals also found that the critical exculpatory statement in the March letter was inadmissable hearsay. As the court explained:

> The only possible use of them would have been to admit the statement in the second letter, "I know that you had nothing to do with these murders," for the truth of the matter asserted therein. Thus, it constitutes hearsay, MRE 801, and it is not within any exception that would make it admissible. Although, impeachment is not a hearsay use, MRE 801(c), the statement nevertheless could not have been brought in through the "back door" without again presenting that statement for the truth of the matter asserted.

*Id*. In other words, the court seems to conclude that a hearsay statement may not be offered for impeachment purposes if the statement could also be construed as being offered for the truth of the matter. This is not the normal rule. *See* Fed.R.Evid. 806; *United States v. Arnold*, 486 F.3d 177, 193 (6th Cir. 2007) (en banc) ("Rule 806 of the Federal Rules of Evidence permit[s] the introduction of [hearsay statements], not for the truth of the matter asserted, but for impeachment purposes . . . .") Nevertheless, as the district court noted, we are bound by the Michigan Court of Appeal's

interpretation of Michigan evidentiary law, and thus we must accept for purposes of habeas review that the letters would have been inadmissible. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Beauchamp argues, notwithstanding this evidentiary ruling, that he has a constitutional right to have the letters introduced. We have held in the past that the application of an otherwise-valid evidentiary rule may deprive a defendant of the right to present a full defense. *See Lewis v. Wilkinson*, 307 F.3d 413, 420-21 (6th Cir. 2002) (holding that the exclusion of a complaining witness's diary excerpts under the Ohio rape shield law deprived the defendant of the opportunity to fully cross-examine the complainant). Thus, if Beauchamp can show a right to have the letters introduced, he may be able to establish that the failure to attempt to get the letters introduced constitutes deficient performance.

It is axiomatic that habeas relief is not available to a petitioner whose only claim of error is the exclusion of otherwise admissible evidence under state evidentiary standards. *Estelle*, 502 U.S. at 68. We note, however, that errors in excluding relevant evidence may rise to the level of a constitutional deprivation, even if such evidentiary determinations comport with state law. *Chambers v. Mississippi*, 410 U.S. 284, 296 (1973). In this case, a prior written statement made by Beauchamp's sole accuser wholly at variance with his trial testimony, which was that Beauchamp paid him to murder two individuals, would seemingly be highly relevant and otherwise admissible under both state evidentiary standards and the Constitution. Here, however, the trial counsel for the petitioner determined that offering one of the letters would result in the admissibility of a second letter in which the same witness suggests that the petitioner had not paid him for the shooting. A

tactical decision to avoid admission of both letters is well within the range of effective assistance of counsel.

Beauchamp also relies on *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006), and *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987), for the proposition that counsel is deficient when he or she fails to impeach a key prosecution witness. *Higgins*, in particular, is similar to the facts of this case, in that the prosecution's entire case rested on the credibility and motivations of a single witness. *See Higgins*, 470 F.3d at 633 ("The district court correctly stressed that Young was not only the *sole* witness that directly implicated Higgins as the shooter, but he was also a suspect whose interest in avoiding criminal culpability was tied firmly to convincing the police and the jury that Higgins—and not Young himself—shot Ramsey.") (internal quotation marks omitted). However, in *Higgins*, trial counsel made no effort at all to cross-examine the key witness. *See id.* at 628 ("[Trial counsel] declined to do any cross-examination at all. . . .Thus, the only person who directly implicated Higgins as Ramsey's killer was never cross-examined in front of the jury.")

Here, Beauchamp's attorney extensively cross-examined Higginbotham. Indeed, Beauchamp's entire defense was based on showing that Higginbotham was lying about Beauchamp's role in the killings. Thus, even construing the letters to be unambiguously helpful to Beauchamp's case, they would at best buttress the argument that Beauchamp's counsel was already making. As the Supreme Court has emphasized, a defendant has the right to "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Beauchamp and his

counsel had a full opportunity to cross-examine Higginbotham, and thus Beauchamp had no constitutional right to introduce the letters.

Without a constitutional violation on which to hang his hat, Beauchamp is left with the claim that his trial counsel was ineffective for not attempting to admit inadmissible evidence. The Michigan Court of Appeals found that there can be no prejudice to Beauchamp for his counsel failing to take an ultimately futile action. *Beauchamp*, 2006 WL 657068, at \*2. We agree, and therefore we affirm the district court's denial of Beauchamp's petition for a writ of habeas corpus.[1]

## C. Failure to Investigate

Beauchamp also argues that his counsel was ineffective for failing to investigate the circumstances surrounding the letters. As a threshold matter, it is not clear that we have jurisdiction to consider this argument. The certificate of appealability is limited to consideration of whether counsel was ineffective for "failing to use exculpatory evidence to impeach" Higginbotham—there is no mention of investigating the circumstances of the letters themselves. In reviewing the denial of a petition for a writ of habeas corpus, we are limited to those issues specified in the certificate of appealability. 28 U.S.C. § 2253(c); *Seymour v. Walker*, 224 F.3d 542, 561 (6th Cir.2000). However, we may consider claims that are "part and parcel" of the issues raised in the certificate of appealability. *Calvert v. Wilson*, 288 F.3d 823, 838 n.4 (6th Cir. 2002) (Cole, J., concurring).

---

[1] Beauchamp also would have us review the degree to which the Michigan Court of Appeals properly deferred to the factual findings of the trial court at the *Ginther* hearing. A federal court considering a habeas petition reviews the "last state court decision adjudicated on the merits." *Gagne v. Booker*, ___ F.3d ___, 2012 WL 1700291, at \*15 (6th Cir. 2012) (en banc). As the last reasoned decision on ineffective assistance of counsel is the decision of the Michigan Court of Appeals, we review that decision, not the decision of the trial court.

Investigating the circumstances surrounding the letter is at least arguably related to the use of the letters at trial.

Even if we have jurisdiction to consider the claim, it fails on the merits. Beauchamp's counsel made clear at the *Ginther* hearing that they did not investigate the circumstances surrounding the letter because they had already decided not to attempt to introduce the letters. This is a logical trial strategy unless the underlying decision not to try to admit the letters was ineffective assistance of counsel. Thus, the investigation claim is derivative of the claim addressed above. As we reject the claim that Beauchamp's counsel was ineffective for failing to seek the admission of the letters, we must also reject the derivative claim.

In addition, it is not clear how Beauchamp could have been prejudiced by counsel's failure to investigate the letters. Beauchamp alludes vaguely in his brief to the idea that the investigation might have discovered foundational evidence that would allow the letters to be admitted as evidence. While such an investigation conceivably could have allowed counsel to properly authenticate the letters, the letters would still have been inadmissible as hearsay. Beauchamp does not offer any scenario, nor can we envision one, where further investigation into the origin of the letters would have any effect on the Michigan Court of Appeal's ruling on hearsay. Thus, the letters would have been inadmissible even with an investigation, and Beauchamp was not prejudiced by any failure to investigate.

### III. CONCLUSION

We AFFIRM the district court's denial of the petition for a writ of habeas corpus.