HELENE N. WHITE, Circuit Judge,
concurring in the result.
I concur in the result because Shields’s confession added little to the eyewitness testimony, and that testimony, together with Shields’s burns, would have resulted in his conviction with or without his confession.
I would not conflate the issue whether Shields’s confession was voluntary—the issue decided at the suppression hearing— with the issue whether he was capable of waiving his Miranda rights.
I
First, trial counsel was deficient in failing to argue Shields’s waiver was not *816 knowing and intelligent. “A reviewing court must judge the reasonableness of counsel’s actions on the facts of the defendant’s case, viewed from counsel’s perspective at the time.” Higgins v. Renico, 470 F.3d 624, 631-32 (6th Cir. 2006).
Following a ten-day Atkins hearing, the district court issued a thirty-three page order explaining in detail Shields’s mental limitations and concluding he is mentally retarded, Soon after the Atkins hearing, the district court held a hearing on trial counsel’s motion to suppress. Given the obvious connection between Shields’s mental limitations and his capacity to knowingly and intelligently waive Miranda rights, trial counsel’s failure to advance that argument is incomprehensible. Trial counsel filed his motion to suppress on August 19, 2008, after the government produced Shields’s recorded statement. Trial counsel did not supplement the motion to suppress to argue that Shields’s waiver of Miranda rights was not knowing and intelligent, even though the district court determined that Shields’s functioning is that of a child in the range of eight to eleven years old, PID 5988, and he exhibits “deficits or impairments in present adaptive functioning” in multiple areas including functional academic skills, home living, work, use of community resources, and self-direction. PID 5978, 5988, 5990-94. The court also observed that Shields lacks the ability to engage in “meaningful conversation,” and that although he may provide answers to questions that sound plausible, further probing will show that “the answer originally given is ... unreliable.” PID 5974. These findings provided strong support for the argument that Shields’s waiver of his Miranda rights was not knowing and intelligent.[4]
Second, there was a reasonable probability that the district court would have granted a motion to suppress brought on the omitted grounds. The majority concludes that the district court’s purported finding that Shields’s Miranda waiver was knowing and intelligent evidences that there is no reasonable probability that the district court would have granted a motion to suppress brought on those grounds. Maj. Op. at 815 (“the likelihood that Judge Donald would have suppressed Shields’s confession if only Shields’s trial counsel had uttered one of the magic words “Miranda” or “knowing” or “intelligent” is essentially nil in light of the fact that Judge Donald ... expressly ruled that Shields’s confession was voluntary and knowing and intelligent.” (emphasis in original)). However, trial counsel’s motion to suppress Shields’s statement was brought solely on voluntariness grounds. The district court did not undertake the fact-specific inquiry required to determine whether Shields knowingly and intelligently waived his Miranda rights because the issue was not before it. Further, no part of the earlier Atkins hearing addressed Shields’s ability to understand Miranda warnings. Cf Maj. Op. at 812, 815. In ruling on the motion to suppress, the district court simply observed that Shields was “alert and attentive” and “did not manifest .signs of being incapable of a knowing, intelligent, and informed waiver.” PID 6070. These statements do not indicate or suggest that the court considered whether Shields’s mental retardation contributed to an invalid waiver of Miranda rights. The inquiry would have differed had trial counsel argued Shields’s waiver of his rights was not knowing and intelligent: whether the officers had reason to *817 believe Shields comprehended the warnings and whether he had the actual mental ability to understand the warnings at the time of the interrogation. Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009) (“while our primary focus must remain on what the interrogating officers could have concluded about Garner’s ability to understand the warnings,' we may consider later-developed evidence of a defendant’s actual mental ability to understand the warnings at the time of the interrogation. This is because, if it turns out by subsequent inquiry that a defendant in his mind could not actually understand the warnings, the finder of fact may be more inclined to determine in a close case that the police should have known that the defendant could not understand.”)
Here, although Shields told Pearlman and Clay, the interrogating officers, that he had been in special education classes, dropped Out of high school, could read some but was not good at it, and that he had taken pain medication that morning for the bums that Pearlman acknowledged were all over Shields’s face and arms, the officers explained none of the Miranda rights to Shields. PID 7400-01. Rather, Pearlman had Shields read the first line of the Miranda rights form out loud, i.e., “You have the right to remain silent.” Pearlman testified that Shields said he knew his rights, had been arrested before, and knew that he did not have to talk to the officers if he did not want to. The officers did not follow up to determine whether Shields understood his remaining rights, particularly the rights to talk to a lawyer before being questioned and to have a lawyer present during questioning. Nor did the officers follow up to determine, whether Shields understood the warning that anything he said could be used against him in court. Had the issue whether Shields’s waiver of Miranda rights was knowing and intelligent been before the district court, there is a reasonable probability that the district court would have concluded that there were strong grounds for finding an invalid waiver-definitely stronger than in Garner, 557 F.3d 257, on which the majority relies. Maj. Op. at 813-14. In Gamer, in stark contrast to the instant case, the interrogating officers “carefully read” Garner his Miranda rights and Garner “stated clearly ... that he understood those rights.”[1] Id. at 265.
II
Nevertheless, I concur in the result because I conclude the admission of Shields’s confession did not affect the outcome of the trial. As described in the majority opinion, Parker gave a detailed first-hand account of Sunny’s and Shields’s actions. The only part he did not observe was who shot Lott in the woods. But Shields’s confession does not provide incriminating evidence on that point, as Shields did not admit to being the shooter. Parker’s testimony and Shields’s burns, taken together, make it highly improbable that suppression of the statement would have affected the outcome of the trial. On that basis, I concur.

. Judge Clay concluded the same in his dissent in United States v. Shields, 480 Fed.Appx. 381 (2012).

. Garner was nineteen, had a troubled upbringing, poor education, and an IQ of 76 that placed him ’ in the borderline range of intelligence. Garner, 557 F.3d at 263. Unlike Shields, Garner completed 12th grade and told the police that he could read. Id at 276 (Moore, J., dissenting). Most importantly, unlike Shields’s interrogation, the officers in Garner confirmed that Garner understood each of the rights and the consequences of waiving them by verifying each provision individually, "Garner was carefully read his Miranda rights and stated clearly to officers that he understood those rights." Garner, 557 F.3d at 265 (emphasis added).