**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1198n.06

**No. 06-1463**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 20, 2012*
DEBORAH S. HUNT, Clerk

DIAPOLIS SMITH,

       Petitioner-Appellant,

v.

JEFFREY WOODS, Warden,

       Respondent-Appellee.

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN**

_____/

**BEFORE:**    **MOORE, CLAY, and COOK, Circuit Judges.**

**CLAY, Circuit Judge.** This matter is before this Court on the issue of ineffective assistance of counsel during Petitioner Diapolis Smith's trial and sentencing for second-degree murder, in violation of Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, in violation of Mich. Comp. Laws § 750.227b. For the reasons that follow, we **AFFIRM** the district court's judgment denying Petitioner habeas corpus on his ineffective assistance claims of counsel.

**BACKGROUND**

Over the course of this litigation, the facts of this case have been adequately set forth by the prior opinions of the district court and this Court, and need not be repeated here. *See Smith v.*

*Berghuis*, 543 F.3d 326, 329 (6th Cir. 2008), *overruled by Berghuis v. Smith*, __ U.S. __, 130 S. Ct. 1382 (2010); *Smith v. Berghuis*, No. 1:03-CV-87, 2006 WL 461248 (W.D. Mich. Feb. 23, 2006); *see also People v. Smith*, No. 172558, 1999 WL 33445050, at *1 (Mich. Ct. App. May 7, 1999).

Following Petitioner's convictions, he appealed to the Michigan Court of Appeals, raising a bevy of issues including a jury fair cross-section claim and ineffective assistance of counsel claims. The Michigan Court of Appeals remanded the case to the trial court for an evidentiary hearing on Petitioner's fair cross-section claim. *See Smith*, 1999 WL 33445050, at *1. After the hearing was held, the state trial court concluded that while African-Americans were consistently underrepresented in Kent County jury venires, such underrepresentation had not been shown to be systematic; therefore, Petitioner was not entitled to relief. The Michigan Court of Appeals reversed and held that Petitioner had shown that the underrepresentation of African-Americans in Kent County was systematic, and therefore, the Court of Appeals ordered a new trial. *Smith*, 1999 WL 33445050, at *3–4. The State then appealed the Court of Appeals' decision to the Michigan Supreme Court, which held that Petitioner had shown neither underrepresentation nor that such underrepresentation was systematic. *People v. Smith*, 615 N.W.2d 1, 3–4 (Mich. 2000). Consequently, the Michigan Supreme Court remanded the case to the Court of Appeals for consideration of Petitioner's remaining claims. *Id*. at 4. On remand, in February 2001, the Court of Appeals denied Petitioner relief. *People v. Smith*, No. 172558, 2001 WL 721337, at *1 (Mich. Ct. App. Feb. 27, 2001).

Having exhausted his state-court remedies, Petitioner next filed this petition for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Western District of Michigan. The petition was referred to a magistrate judge who produced a report and

recommendation, in which he recommended that the district court deny Petitioner relief on all claims. The district court adopted the magistrate's report and recommendation and denied Petitioner's petition for habeas corpus. *Smith*, 2006 WL 461248. The district court also denied Petitioner's application for a certificate of appealability. *Smith v. Berghuis*, No. 1:03-CV-87, 2006 WL 839099 (W.D. Mich. Mar. 29, 2006). "On July 11, 2007, however, this Court granted Petitioner a certificate of appealability with respect to two issues: (1) Petitioner's constitutional right to an impartial jury drawn from a fair cross-section of the community; and (2) ineffective assistance of counsel." *Smith*, 543 F.3d at 333–34. We later determined that Petitioner had made out his fair-cross-section claim, *id*. at 340, and therefore did "not reach the issues related to his ineffective assistance of counsel claims." *Id*. at 334. The State sought and was granted a writ of certiorari from the United States Supreme Court. *Berghuis v. Smith*, 130 S. Ct. 48 (2009). The Supreme Court reversed this Court's determination on the fair-cross-section claim and remanded for further proceedings on Petitioner's ineffective assistance of counsel claims, *Smith*, 130 S. Ct. at 1395–96.

**DISCUSSION**

Petitioner claims that he received ineffective assistance of counsel because his counsel: (1) failed to investigate evidence to support a motion to suppress witness identifications; (2) failed to properly make a motion to suppress an identification made by a witness; (3) failed to properly question a prosecution witness; and (4) failed to correct an error in a pre-sentence report or present arguments for leniency at sentencing.

A. **Standard of Review**

No. 06-1463

On appeal of a denial of a petition for a writ of habeas corpus, we review the district court's conclusions of law *de novo* and its factual findings for clear error. *Hanna v. Ishee*, 694 F.3d 596, 605 (6th Cir. 2012). Such review is, however, subject to the limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *Id.* Under 28 U.S.C. § 2254(d), a petitioner may not obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to . . . clearly established Federal law" if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law [or] . . . confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *accord Hanna*, 694 F.3d at 605. The relevant "clearly established federal law" is the holdings of the Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

Additionally, a state court decision is "an unreasonable application of [clearly established federal law]" if it either "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or makes an unreasonable determination as to whether or not to extend a legal principle from the Supreme Court's precedent to a new context. *Williams*, 529 U.S. at 407. Further, as the Supreme Court has

4

recently explained, "[f]or purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785 (2011) (emphases in original) (internal quotation marks omitted). That is, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 786 (internal quotation marks omitted).

Overall, AEDPA "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems." *Id*. (internal quotation marks omitted).

## B.    Waiver

As an initial matter, Respondent contends that Petitioner has waived his right to appeal his three ineffective-assistance-of-counsel-at-trial claims (failure to investigate, failure to properly argue a suppression motion, and failure to properly cross-examine). Respondent contends that Petitioner's objections to the magistrate's report and recommendation were not specific enough to meet our requirements to preserve the issues for appeal.

"Generally, the failure to file specific objections to a magistrate's report constitutes a waiver of those objections." *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). This rule, first promulgated in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), and affirmed by the Supreme Court in *Thomas v. Arn*, 474 U.S. 140 (1985), is intended to promote "judicial efficiency" and avoid duplicative work by the magistrate judge and the district court. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Therefore, we have required that "objections . . . be clear enough to enable the district court to discern those issues that are dispositive

and contentious" in order to preserve those issues for appellate review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The objection filed by Petitioner's post-conviction (and current) counsel with respect to the ineffective-assistance-of-counsel-at-trial claims falls well below this standard.[1]

This waiver rule, however, is "nonjurisdictional," and therefore, can be excused at our discretion "in the interests of justice." *Thomas*, 474 U.S. at 155; *see also Kent v. Johnson*, 821 F.2d 1220, 1222–23 (6th Cir. 1987). While we have tended to use this exception to excuse cases where there was some obstacle to filing the objections, *see, e.g.*, *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011); *Kent*, 821 F.2d at 1222–23, those are not the only situations to which we have seen fit to apply the exception. In *United States v. Lucas*, 640 F.3d 168 (6th Cir. 2011), we addressed a defendant's Fourth Amendment claim, in spite of the fact that he had completely failed to file objections, "because the record [was] sufficiently clear and complete to make a determination." *Id*. at 173.

Like in *Lucas*, we find the record here sufficiently clear and complete to address Petitioner's ineffective-assistance-of-counsel-at-trial claims. Moreover, unlike *Lucas*, where we excused the utter failure to file, in order for us to reach Petitioner's claims, we need only excuse Petitioner's post-conviction counsel's lack of specificity in his objections. Therefore, we choose to exercise our

---

[1]Petitioner's objection to the magistrate judge's report and recommendation on these claims is as follows:

20. Issue XI. Ineffective assistance of trial counsel. It was unreasonable for the state courts and the magistrate not to hold an evidentiary hearing, and unreasonable to rule without that hearing. *Michael Williams v. Taylor*, 529 U.S. 420 (2000). It is unreasonable to require a defendant to support his claims with testimony, then forbid the taking of testimony.

discretion to excuse Petitioner's lack of specificity in his objections to the magistrate judge's report and recommendation with respect to Petitioner's three ineffective-assistance-of-counsel-at-trial claims. *See Lucas*, 640 F.3d at 173.

## C. Applicable Law

Claims alleging ineffective assistance of counsel, as do all of Petitioner's pending claims, are governed under the familiar performance-and-prejudice test from *Strickland v. Washington*, 466 U.S. 668 (1984). To establish deficient performance under *Strickland*, Petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688); *accord Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376, 1384 (2012). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Petitioner bears the burden of overcoming the "presumption that the challenged conduct might be considered sound trial strategy." *Hanna*, 694 F.3d at 612. That is to say, Petitioner must show that counsel made errors "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted).

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694). "Counsel's errors must be so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Id*. at 787–88 (internal quotation marks omitted).

With respect to how AEDPA's standard of review interacts with *Strickland*'s performance-and-prejudice test, the Supreme Court's recent *Harrington v. Richter* decision is instructive:

> Surmounting *Strickland's* high bar is never an easy task. . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . .
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. . . . [T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 131 S. Ct. at 787–88 (citations and internal quotation marks omitted). It is through this lens of double deference that we must assess Petitioner's ineffective assistance claims.

**D.      Analysis**

**1.      Failure to Investigate**

On February 19, 1992, Petitioner participated in a lineup conducted by the Grand Rapids Police Department. Approximately twelve witnesses were present for the lineup as was Petitioner's then-counsel, Gayle Brennan. Of the twelve witnesses present at the lineup, only three (Anthony Hardin, Naeem Wahid, and Lenora Jones) were able to identify Petitioner as the shooter at So-So's Lounge, where the shooting occurred. Brennan stated that her primary role at the lineup was to advise Petitioner regarding the lineup procedure and to ensure the overall fairness of the lineup. Additionally, however, she asked the witnesses specifically whether they had been shown any photographs prior to the lineup; none of the witnesses indicated that they had.

Petitioner first claims that his trial counsel, who was not Brennan, rendered ineffective assistance by failing to retain a private investigator to determine whether witnesses had, in fact, been shown photos of Petitioner prior to the police lineups conducted in this case. Petitioner asserts that the determination of whether witnesses were shown photos of him prior to the lineup would have assisted him in obtaining suppression of witness identifications inasmuch as photos would have rendered witness identifications suggestive and unreliable.

On this claim, the Michigan Court of Appeals concluded that Petitioner "support[ed] his claim solely with speculation that a private investigator might have discovered that lineup witnesses had been shown photos of defendant before the lineup." *Smith*, 2001 WL 721337, at *8 (internal quotation marks omitted). We agree. Petitioner's counsel was not objectively unreasonable in not hiring an investigator because Petitioner's prior counsel was present during the lineup and asked each witness whether he or she was shown photographs of Petitioner in advance. Even if Petitioner could show that the decision not to expend resources on an investigator whose sole purpose would be to re-ask questions already asked by prior counsel was outside of the "wide range of reasonable professional assistance," *Richter*, 131 S. Ct. at 787, Petitioner has not shown that he was prejudiced thereby. Therefore, the Michigan Court of Appeals decision on this ineffective assistance claim was not an unreasonable application of clearly established federal law. *See Rayner v. Mills*, 685 F.3d 631, 641 (6th Cir. 2012).

### 2. Failure to Properly Argue the Motion to Suppress

Although Petitioner's counsel moved to suppress the witness identifications, Petitioner claims that by failing to raise *People v. Kachar*, 252 N.W.2d 807 (Mich. 1977), in the course of

arguing that motion, Petitioner's counsel rendered ineffective assistance. The *Kachar* case that Petitioner claims should have been argued, however, is inapposite. In *Kachar*, the Michigan Supreme Court set out an eight-factor test for determining when the prosecution has "establish[ed] an independent basis for in-court eyewitness identification when pretrial identification has been rendered invalid." 252 N.W.2d at 808. However, the state trial court in this case, over arguments by Petitioner's counsel, denied Petitioner's motion to suppress the witness identifications because the lineup was unduly suggestive, and the Michigan Court of Appeals affirmed that decision. *Smith*, 2001 WL 721337, at *1–2.

In light of the resolution of that issue, which the district court determined not to be unreasonable under § 2254, and which is not encompassed in the Petitioner's certificate of appealability, there is no basis to suggest that counsel was ineffective. *Kachar* applies only when a pretrial lineup is thrown out; in Petitioner's case, the lineup was not thrown out. Therefore, *Kachar* was inapplicable, and any argument about it would have been futile. Accordingly, it was not error for Petitioner's counsel not to argue *Kachar* inasmuch as it was irrelevant to the case at hand. Furthermore, it was not an unreasonable application of clearly established federal law for the Michigan Court of Appeals to reject Petitioner's ineffective assistance claim on this basis. *Cf. Beauchamp v. McKee*, No. 10-1347, 2012 WL 2926274, at *6 (6th Cir. July 18, 2012) (unpublished) (Petitioner "is left with the claim that his trial counsel was ineffective for not attempting to admit inadmissible evidence. The Michigan Court of Appeals found that there can be no prejudice to [petitioner] for his counsel failing to take an ultimately futile action. We agree." (internal citation omitted)).

## 3.    Failure to Properly Cross-Examine

Petitioner's final basis for his ineffective-assistance-at-trial claim is that his counsel failed to properly cross-examine Grand Rapids police detective Thomas Lyzenga about whether he threatened witness Dorothy Brown in order to obtain an identification.

Lyzenga was the lead investigator on the shooting for which Petitoner was convicted. During the course of his investigation, he interviewed a number of witnesses, including sisters Kathleen and Dorothy Brown. It was during the interview with the Brown sisters that someone first identified the shooter as "Baby D," which eventually led police to focus on Petitioner. Dorothy Brown admitted at trial that she was hesitant to implicate anyone in the shooting, but began cooperating after allegedly being told by Lyzenga that her failure to do so could result in "trouble."

As found by the Michigan Court of Appeals, "the record reveals that, on cross-examination, defense counsel elicited testimony from Lyzenga that Brown did not initially implicate defendant, that Lyzenga then accused Brown of lying, and that Lyzenga told Brown that her lying would land her in trouble." *Smith*, 2001 WL 721337, at *8. Nonetheless, Petitioner argues that it was ineffective assistance to have not directly asked Lyzenga whether he threatened Dorothy Brown.

 Petitioner's claim lacks merit. Though there has been no evidentiary hearing about Petitioner's counsel's motives, as the magistrate judge noted, "to ask more directly whether a specific threat had been made would run the risk of receiving a denial from Lyzenga, which would have been damaging to Petitioner's theory. With the kind of responses he had already elicited, counsel was free to and did argue to the jury that Lyzenga had made threats." While we may question the wisdom of Petitioner's counsel's tactics of questioning around the issue so as to

preserve the ability to argue the inference that Lyzenga threatened Dorothy, Petitioner bears the burden of overcoming the "presumption that the challenged conduct might be considered sound trial strategy." *Hanna*, 694 F.3d at 612. This is a burden that Petitioner has not carried. *See Richter*, 131 S. Ct. at 786 (requiring a state court determination to be so egregious that no fairminded jurist could have come to it in order to grant habeas relief).

Moreover, because we do not know what Lyzenga's response to such a question would have been, and we cannot admit new evidence now to determine what his response may have been or why Petitioner's counsel took the course she did, *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011) (holding that when a state court adjudicated a habeas petitioner's claim on the merits, "review under § 2254(d)(1) is limited to the record that was before the state court"), Petitioner cannot, even assuming deficient performance, show prejudice. This is true even before we add the additional deferential gloss of AEDPA. Therefore, we conclude that the Michigan Court of Appeals did not unreasonably apply *Strickland* to this ineffective assistance claim.

### 4. Ineffective Assistance at Sentencing

In his last assignment of error, Petitioner alleges that his trial counsel rendered ineffective assistance of counsel at sentencing. Specifically, Petitioner contends that his counsel was ineffective because his counsel failed to correct an alleged error in the presentence report about Petitioner being the leader of an interstate drug dealing operation based in Kentucky, and because counsel failed to make arguments for leniency before the trial court at sentencing.

At sentencing, Petitioner and his counsel were given an opportunity to make corrections to the presentence report as well as present comments regarding what would be an appropriate sentence.

On the presentence report, counsel represented that both he and Petitioner had reviewed the report and had only one objection with respect to the date on which Petitioner had been shot in an unrelated incident. No mention was made about Petitioner's current claim that he was not, as stated in the presence report, the leader of a Kentucky-based drug ring. As to additional arguments, Petitioner's counsel reasserted that Petitioner was innocent, and then Petitioner was allowed to address the court. In his statements, Petitioner thanked his counsel "for *not* representing [him] to the best of his abilities," detailed various perceived errors that counsel had made, and maintained his innocence.

On these grounds, the Michigan Court of Appeals rejected Petitioner's claims of ineffective assistance of counsel at sentencing. First, the Court of Appeals found that Petitioner did not offer any proof to demonstrate that counsel's decision regarding what to present at sentencing, generally a tactical decision, was deficient. Second, the Court of Appeals found Petitioner's contention that he had not reviewed the presentence report to be contradicted by a statement in the record "by defense counsel that both he and defendant had reviewed the [presentence report]." *Smith*, 2001 WL 721337, at *8.

While the failure of Petitioner's counsel to present any mitigating evidence is certainly troubling and the Supreme Court has held on a number of occasions that the failure to investigate and present mitigating evidence at sentencing can amount to ineffective assistance, *see*, *e.g.*, *Rompilla v. Beard*, 545 U.S. 374 (2005), Petitioner has adduced no proof that there was additional mitigating evidence that his counsel should have presented at sentencing. Absent this, even if we were to assume that counsel's sentencing representation "fell below an objective standard of

13

reasonableness," *Richter*, 131 S. Ct. at 787 (internal quotation marks omitted), Petitioner cannot show he was prejudiced, and therefore, we cannot find that the Michigan Court of Appeals was unreasonable in its application of clearly established federal law.

As to the presentence report, it is clearly established that "a defendant [must] be afforded the opportunity of rebutting derogatory information demonstrably relied upon by the sentencing judge, when such information can in fact be shown to have been materially false." *Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (internal quotation marks omitted); *see also Townsend v. Burke*, 334 U.S. 736, 741 (1948). Even if we were to assume, as Petitioner claims, that he did not review the presentence report and therefore could not correct his criminal history, Petitioner again has offered no argument regarding prejudice. He has failed to show that he was not the leader of the Kentucky drug ring and has failed to show that the sentencing judge relied upon this alleged misinformation in determining Petitioner's sentence.

All that the record reveals is that Petitioner's presentence report recommended a "lengthy" prison sentence because of the severity of the crimes for which he was convicted, the fact that the crime was committed while he was on parole and his extensive criminal history, and that the sentencing court accepted the recommendations of the report and specifically noted that Petitioner's "long felony record . . . [was] obviously . . . not in [his] favor." However, the Kentucky drug ring charge was not listed as part of Petitioner's criminal convictions, but rather in a separate section of impressions from Petitioner's parole officer. On this record, we cannot find that the Petitioner's counsel's claimed errors met *Strickland*'s standard for ineffective assistance or that the Michigan Court of Appeals unreasonably applied that standard.

14

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment denying Petitioner habeas corpus on his ineffective assistance claims.