NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  14a0787n.06

Case Nos. 11-5138/12-5461

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 16, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GREGORY SULLIVAN, | ) | |
| | ) | |
| *Petitioner-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| UNITED STATES of AMERICA, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| *Respondent-Appellee*. | ) | |
| | ) | |

Before:  BATCHELDER and McKEAGUE, Circuit Judges; OLIVER, District Judge.[*]

**ALICE M. BATCHELDER, Circuit Judge.**  Petitioner Gregory Sullivan appeals the district court's denials of his 28 U.S.C. § 2255 motion to vacate his conviction and his motion to alter or amend that decision.  In addition to challenging the district court's judgments, Sullivan has filed motions here, including a motion to supplement the record with additional materials that were not before the district court or to remand for the district court to admit those materials.  The government also moved for a remand concerning Sullivan's motion to supplement.  For the reasons that follow, we DENY the motions; AFFIRM the judgments in part and REVERSE in part; and REMAND to the district court for resentencing consistent with this opinion.

**I.**

This case has a lengthy and tangled procedural history, much of which is pertinent to the disposition of this appeal and is, therefore, described here in some considerable detail.  Before

---

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

1

proceeding, however, it bears mention that while Sullivan (when filing *pro se*) and his counsel (appointed for this appeal) make allusions to "actual innocence," there is no such showing here.

Rather, confronted with a forest of evidence against him, Sullivan and counsel have taken aim at a few stray branches, at which they hack away virulently in an apparent hope that we might mistake these branches for the forest itself. But the forest of evidence is overwhelming – the prosecutor proved Sullivan was guilty, the jury rendered a unanimous guilty verdict, and the district court sentenced Sullivan less harshly than it could have. Sullivan and his counsel have their own reasons for persisting in a never-ending litany of motions and amendments, but at some point that must come to an end.

**A.**

Between December 1999 and June 2002, Gregory Sullivan robbed 12 banks in northern Kentucky, of a total of $107,425. When he was caught, the federal prosecutor charged him with ten counts of bank robbery, in violation of 18 U.S.C. § 2113(a), two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and two counts of use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Sullivan entered not-guilty pleas on all counts and the prosecutor tried the case to a federal jury.

At trial, the prosecutor produced 25 eyewitnesses to describe the robber and the robberies. More importantly, 15 of those eyewitnesses – at least one for every robbery – specifically identified Sullivan as the robber. The prosecutor corroborated the testimony with independent evidence, such as surveillance video, and a shirt and ball cap recovered from Sullivan's possession that matched certain witness descriptions. The police had lifted Sullivan's fingerprint from one of the robberies and had matched the description of the getaway car to a Camaro Z-28 registered to Sullivan's wife. Another police officer testified that his encounter with Sullivan on October 11, 2000 – the same day as one of the robberies – was memorable

because Sullivan had a large amount of cash, in $20 and $50 bills. A Boone County Child Support Officer testified that, on October 25, 2000 – the day of another robbery – Sullivan made a $3,000 cash payment, in $50 and $100 bills. And several witnesses linked Sullivan to "bait bills" from another robbery. Finally, two jail-house informants testified that Sullivan had boasted about his committing the robberies, describing himself as the "Bandana Bandit."

Sullivan called two witnesses in his defense and testified himself. He asserted that he did not use any bank and relied solely on cash, that he had not robbed the banks, and that all of the prosecution witnesses were mistaken or lying. Sullivan did not provide an explanation for how he had obtained the cash or an alibi for any of the 12 robberies, nor did any other witness.

The jury convicted Sullivan on all 14 counts. The district court ordered a Presentence Report (PSR) for sentencing and, relying on the report's information, sentenced Sullivan to 572 months in prison (the high end of the then-mandatory range) and $107,425 in restitution.[1]

Sullivan appealed here, claiming that the evidence was insufficient to convict him of three of the robberies; the photo lineup had been unduly suggestive; and the government had failed to disclose certain exculpatory evidence, namely discarded fiber and hair samples taken from a bandana worn by the robber during one robbery and copies of the suspect-description forms completed by some eyewitnesses shortly after certain robberies. We rejected these claims and affirmed his conviction. *See United States v. Sullivan*, 431 F.3d 976 (6th Cir. 2005). Sullivan had also claimed ineffective assistance of trial counsel, but we declined to decide that

---

[1] The PSR tabulated Sullivan's total offense level at 32 and criminal history at III, which produced a sentencing range of 151-188 months. But by statute, the two counts regarding the use of a firearm during and in relation to a crime of violence required consecutive sentencing, to each other and all other counts, which added 84 and 300 months, respectively. *See* 18 U.S.C. §§ 924(c)(1)(A)(ii) (brandishing) & 924(c)(1)(C)(i) (second or subsequent such offense). The final range was 535-572 months. The PSR also recommended an upward departure because the Guidelines maximum was five robberies, leaving seven robberies unaccounted for in this calculation.

Sullivan had obtained new counsel for sentencing (who remained Sullivan's counsel for his direct appeal) and that counsel filed an objection to the upward departure, stating that "given [Sullivan's] age, the amount of 924(c) time he is going to serve, and the amount of time he is going to receive as a result of the bank robberies . . .

3

claim on the record then before us, preferring instead to follow our ordinary practice of directing a defendant to file ineffective-assistance-of-counsel claims in a post-conviction proceeding under 28 U.S.C. § 2255. Sullivan did not raise a *Blakely*/*Booker* claim concerning his sentence.[2]

**B.**

On September 24, 2007, Sullivan filed *pro se* a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence." On December 10, 2007, he replaced that motion with an amended § 2255 motion (his *first* amended § 2255 motion), also *pro se*, in which he alleged several constitutional violations. (1) Sullivan claimed that his trial counsel was ineffective for failing to compel discovery of over 50 FBI 302 reports, reports of other suspects, bank videos, local police department reports, and witness statements, or to conduct an adequate investigation; failing to call the fingerprint expert; failing to call two purported alibi witnesses (i.e., the Miniards); failing to object to the magistrate judge's recommendation about his motion to suppress witness identifications; and for allowing him to attend the evidentiary hearing wearing his prison garb. (2) He claimed that his appellate counsel was ineffective for failing to consult him to obtain his consent to the issues to be raised on appeal; failing to raise unspecified but "relevant factual claims"; failing to investigate the purported alibi witnesses; filing the ineffective-assistance-of-trial-counsel claim on direct appeal; and for filing the original (since dismissed) § 2255 motion prematurely. (3) He claimed that he was entitled to resentencing

---

he is looking at a life sentence. I don't see any efficacy in departing upward given the fact that he will be in his mid-eighties when released. Therefore, it follows that the sentence is adequate." The PSR noted this objection.

[2] On September 23, 2004, Sullivan's counsel moved the district court to vacate his sentence pursuant to 28 U.S.C. § 2255, claiming, among other things, that the court's addition of four offense levels in calculating his sentencing guidelines violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). Because the direct appeal was pending, the government responded that the motion was premature and moved to dismiss. On November 1, 2004, the court agreed and rejected the premature § 2255 motion, dismissing it without prejudice. Despite our thorough review of the record, we found no docket entry or other evidence of any attempt by Sullivan or his counsel to amend his direct appeal to add an *Apprendi/Blakely* claim or a claim pursuant to *United States v. Booker*, 543 U.S. 220 (2005) (filed Jan. 12, 2005). We decided his appeal on December 22, 2005.

pursuant to *United States v. Booker*, 543 U.S. 220 (2005). (4) He claimed that the prosecution had withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), specifically the hair samples and witness statements he had raised on direct appeal and the aforementioned FBI and police reports. (5) He claimed that he had not consented to a magistrate judge's presiding over his suppression hearing and that the hearing itself was therefore illegal. (6) He claimed that his trial and appellate counsels' cumulative errors had denied him a fair trial. And he requested an evidentiary hearing on all of these claims. The government responded on March 10, 2008, opposing each of these claims and denying the need for any hearing.

On July 28, 2008, the magistrate judge issued a Report and Recommendation ("R&R") finding Sullivan's claims meritless and advising the district court to deny the motion in its entirety. The magistrate judge concluded the R&R with the following warning, particularly pertinent to Sullivan: "Particularized objections to this Report and Recommendation must be filed within ten days of the date of service or further appeal is waived. A general objection that does not 'specify the issues of contention' is not sufficient to satisfy the requirement of a written and specific objection. Poorly drafted objections [and] general objections . . . are insufficient to preserve the right of appeal" (case citations omitted here). Neither party filed objections.

Over the next two years, Sullivan obtained five extensions of time to file a response, specifically to file "objections" to the R&R.[3] Ultimately, Sullivan had until March 29, 2010, to file his objections but he never did so. Instead, on March 26, 2010, he moved to amend his first

---

[3] On August 7, 2008, Sullivan filed *pro se* a handwritten "Request for Enlargement of Time for Objections to the Magistrates [sic] Report and Recommendation," which the district court granted. On October 27, 2008, Sullivan filed *pro se* a handwritten "Second Request for Enlargement of Time for Objections to the Magistrates [sic] Report and Recommendation," also granted. On January 13, 2009, Sullivan filed *pro se* a motion which included in part a "third and final request for an extention [sic] of time for petitioner to object to the magistrates [sic] report and recommendation to petitioner's 28 USC 2255," again granted. On March 27, 2009, Sullivan filed *pro se* a handwritten "Objections to the Magistrates [sic] Report and Recommendation Petitioner's Request for an Enlargement of time Until he is Medically Cleared from Federal Medical Center Butner, North Carolina, at Least Six More Months," also granted. And on September 14, 2009, Sullivan filed his fifth and final "Request for Enlargement of Time for Objections to Report and Recommendation," which the district court also granted.

amended § 2255 motion (i.e., to file a *second* amended § 2255 motion) and to recall the July 28, 2008, R&R.  And on March 30, 2010, Sullivan moved to strike his March 26 motion and substitute a different motion for leave to amend his first amended § 2255 motion and recall the R&R.  On August 4, 2010, the district court issued a Memorandum Opinion denying Sullivan's motions, adopting the R&R, and denying Sullivan's first amended § 2255 motion.

The district court did not, however, enter a separate "judgment" – on the docket or otherwise – as is required by Federal Rule of Civil Procedure 58(a) to render it entered and final.  Consequently, this judgment was considered "entered" only after 150 days had passed from entry of the decision.  That was January 1, 2011.  *See* Fed. R. Civ. P. 58(c)(2)(B); Fed. R. App. P. 4(a)(7)(A)(ii).  Thus it was later determined that Sullivan's appeal from this judgment was timely and this August 4, 2010, judgment is the first of two judgments that he challenges here.

## C.

On August 31, 2010, Sullivan moved to alter or amend the district court's August 4 decision and renewed his motion for an evidentiary hearing.  The district court denied that motion on November 24, 2010, explaining that, in view of Sullivan's clear understanding that he was to file objections to the R&R and his failure to do so, he had waived or defaulted on his right to appeal the judgment adopting the R&R.  The court also declined to apply equitable tolling and, after analyzing Sullivan's claims of ineffective assistance of counsel, found those claims insufficient to overcome his waiver or default.  The court denied a hearing as moot.

This November 24, 2010, judgment, which was also considered "entered" and final after 150 days, is the second of the two judgments that Sullivan challenges here.  These two judgments are the district court's final decisions on Sullivan's first amended § 2255 motion.

**D.**

Sullivan next filed three successive motions (the "December 2010 motions"). On December 1, 2010, despite the fact that the district court had already ruled on his § 2255 motion, Sullivan moved again for leave to amend that first amended § 2255 motion and file his second amended § 2255 motion. On December 6, 2010, Sullivan moved the district court to reconsider its November 24 decision and, on that same day, moved the court yet again for leave to amend the first amended § 2255 motion and file his second amended § 2255 motion.

On January 27, 2011, Sullivan filed a notice of appeal (Sixth Circuit No. 11-5138) and correspondingly moved the district court to hold that notice in abeyance until it had ruled on his pending motions. On February 18, 2011, Sullivan moved the district court for a certificate of appealability (COA) on several issues and sub-issues. On May 18, 2011, the district court granted Sullivan a COA as to one issue: whether an evidentiary hearing was warranted on Sullivan's claim that he was entitled to resentencing pursuant to *Booker* or *Apprendi*. On June 8, 2011, the court denied Sullivan's motion to hold the notice of appeal in abeyance.

On June 28, 2011, we thoroughly considered the timeliness of Sullivan's appeal and, ultimately finding it timely, accepted his appeal from both the August 4 and November 24, 2010, decisions, but remanded for the district court to rule on Sullivan's three December 2010 motions (i.e., the two motions to further amend his § 2255 motion and his motion to reconsider the November 24 decision). When the district court did not rule, Sullivan petitioned for a writ of mandamus to compel the district court to rule. On September 22, 2011, we denied that petition with the caveat that Sullivan could renew the petition in six months if the district court had still not ruled. On November 7, 2011, the district court denied the motions, holding that the motions to amend were both time barred and substantively meritless and the motion to reconsider was

7

unpersuasive. On March 13, 2012, Sullivan moved the district court to enter final judgment and rule on his request for a COA, which it did on March 14, 2012, denying any COA on any issue.[4]

**E.**

Sullivan appealed again on April 6, 2012 (Sixth Circuit No. 12-5461) and moved to expand his COA to encompass several issues, some of which were raised to the district court[5] and others of which were not.[6] Sullivan also filed two additional motions to expand the COA to include the district court's denial of his motions to further amend his § 2255 motion, to recall the R&R, and to assert additional claims based on various documents he had received from the government in 2010 and 2011 via the Freedom of Information Act (FOIA). Additionally, Sullivan then sought to expand the COA to add claims that the government was in violation of FOIA for withholding further documents. Finally, he sought to include his challenge to the district court's orders denying his motions to amend or reconsider its decisions.

Because Sullivan was raising new claims and attempting to introduce new evidence – such as the FOIA documents – the government moved to remand this case to the district court for an evidentiary hearing in which it could contest or explain the new allegations. Sullivan responded that this court should treat his motions as alternatively requesting authorization to file a second or successive § 2255 motion or a remand to permit him to amend his first amended § 2255 motion to raise new claims or expand his prior claims in light of the FOIA materials.

---

[4] While this order would appear to negate the district court's earlier grant of a COA on the issue of whether an evidentiary hearing was warranted on Sullivan's claim that he was entitled to resentencing pursuant to *Booker* or *Apprendi*, any such effect is rendered irrelevant by our subsequent grant of a COA that includes that claim.

[5] For example, Sullivan cited the issues raised in his first amended § 2255 motion: the government had withheld *Brady* evidence that numerous eyewitness identifications were unreliable; that trial counsel was ineffective by failing to conduct a reasonable pre-trial investigation, compel further discovery, hire a fingerprint expert, or investigate and compel testimony from alibi witnesses; that counsels' cumulative errors deprived him of a fair trial; and that the district court improperly refused to hold an evidentiary hearing on these claims.

[6] For example, Sullivan accused the government of withholding evidence that images of the robber from security cameras were digitally altered; his fingerprint at the bank was planted; others committed the robberies; one of the bait bills was planted to frame him; and evidence was destroyed, altered, suppressed, or fabricated.

On December 12, 2012, we granted in part Sullivan's motion to expand his COA, holding that the COA was granted "only to those issues raised in Sullivan's motion to dismiss and amended motion to dismiss," meaning his original § 2255 motion (Sept. 24, 2007) and his first amended § 2255 motion (Dec. 10, 2007), on which he has relied exclusively since that time, and which the district court denied in judgments dated August 4 and November 24, 2010.

## F.

With the COA questions resolved, we consolidated his appeals and, on March 11, 2013, appointed counsel for Sullivan. On April 9, 2013, we set a briefing schedule for this appeal.

Then, on July 8, 2013, despite the clear statement in our December 12 order expressly limiting the COA, Sullivan's counsel moved to supplement the record with the documents that Sullivan had obtained via FOIA, or to remand for the district court to do so. The government opposed the motion, arguing that those documents are "misleading, incomplete, and not exculpatory," and "fail to establish a legitimate *Brady* claim." After multiple extensions of time, on August 9, 2013, Sullivan's counsel finally replied, asserting that the documents would warrant an evidentiary hearing on a *Brady* claim for three of the 12 robberies. We deferred decision on that motion, referring it to this panel as part of this appellate judgment.

## G.

With briefing complete, we heard argument on March 20, 2014. We find that the arguments made on appeal and the motions raised herein are now ready for decision.

## II.

Five particular doctrines govern our analysis in this appeal. To minimize repetition and focus our analysis concisely, we set forth the legal standard for each doctrine here at the outset and apply them to Sullivan's factual claims individually in the subsections that follow.

***Certificate of Appealability (COA).*** Our "[a]ppellate review of a petitioner's § 2255 motion is limited to those issues specified in the certificate of appealability." *Dunham v. United States*, 486 F.3d 931, 934 (6th Cir. 2007). If we were to consider claims beyond the scope of the certificate of appealability, it would contravene our prior (Dec. 12, 2012) order. *See id.*

***Procedural Default.*** A petitioner must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

***Cause and Prejudice to Overcome Procedural Default.*** "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622 (quotation marks omitted). Here, Sullivan argues cause and prejudice based on ineffective assistance of his appellate counsel.

To prove ineffective assistance of appellate counsel, Sullivan must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Notably, appellate "counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).

More specifically, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted); *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since

time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

  ***Waiver of the Right to Appeal from the Magistrate Judge's R&R.*** The "failure to object to the magistrate's report and recommendation prior to the district court's adoption of such report constitutes a waiver of a right to appeal the district court's order." *United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981). In this case, the July 28, 2008, R&R was emphatically clear on this point, asserting: "Particularized objections to this Report and Recommendation must be filed within ten days of the date of service or further appeal is waived [and] [a] general objection that does not specify the issues of contention is not sufficient to satisfy the requirement of a written and specific objection" (quotation marks omitted), citing *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005),[7] *Thomas v. Arn*, 728 F.2d 813, 814-15 (6th Cir. 1984), *aff'd* 474 U.S. 140, 155 (1985), and *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995), among others.

  But "this rule is procedural and not jurisdictional, [so we] may excuse compliance with it in the interests of justice." *Thomas*, 474 U.S. at 155 (citing plain error by the district court as a possible basis for excuse). We apply this excuse infrequently and under only "exceptional circumstances," *Murphy v. Reed*, 22 F. App'x 390, 391 (6th Cir. 2001), such as a change in the law, *Souter v. Jones*, 395 F.3d 577, 585 (6th Cir. 2005), an obstacle to filing the objections, *Smith v. Woods*, 505 F. App'x 560, 564 (6th Cir. 2012), or an otherwise sufficient showing of "excusable neglect or good cause," *Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002).

---

  [7] Notably, this was the opinion from Sullivan's own direct appeal, in which we held that "Sullivan's failure to object to the magistrate judge's Report and Recommendation constitutes a waiver of his right to appeal the admission of the identification evidence. . . . This court has repeatedly held that a defendant must file such objections in order to preserve the issue for appeal." *Sullivan*, 431 F.3d at 984 (citations omitted).

***Second or Successive § 2255 Motions.*** Before a petitioner may file a second or successive § 2255 motion, he must obtain a certification from the court of appeals authorizing the district court to consider the motion. 28 U.S.C.A. § 2255(h) (citing § 2244(b)(3)(A)).

To obtain that certification, the petitioner "must make a *prima facie* showing that: (1) there is newly discovered evidence that, if proven and viewed in light of the evidence as a whole, sufficiently establishes that no reasonable factfinder would have found him guilty; or (2) a new rule of constitutional law applies to his case that the Supreme Court has made retroactive to cases on collateral review. Any claim that was presented in a prior § 2255 motion must be dismissed." *In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (citations omitted).

## A. *Brady* Violation

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In her appellate brief, Sullivan's counsel points to numerous documents allegedly withheld in violation of *Brady*, specifically concerning: the results of a photo array (Mary Ann Vowels); fingerprint evidence; local police reports (concerning alternative suspects and other robberies); internal FBI reports (opining that different perpetrators committed different robberies, and that the robber had brown eyes), certain witness statements (Kara Fields, Karen Gomes, Paula Hopkins, and other unnamed witnesses), and documentation about the "bait bill."

### 1.

The government argues that Sullivan has procedurally defaulted his claims concerning some of these documents because he failed to raise them on direct appeal. On October 30, 2003, and again on November 26, 2003, Sullivan's appellate counsel filed notices with the district court memorializing specific lists of evidentiary documents he had received from the government

12

on September 26, 2003, and November 10, 2003, respectively. Included on these lists were certain documents that Sullivan's current counsel relies on here, including: the Boone County Police report of the photo array shown to Mary Ann Vowels and her response; witness statements from Karen Fields, Karen Gomes, and numerous other witnesses; several local police reports concerning suspects, robberies, and fingerprint evidence, and at least two FBI reports.

Sullivan's current counsel concedes that the government provided this information, specifically the Boone County Police report of the photo array shown to Mary Ann Vowels and her response, but also explains that "[t]he descriptions of the documents in the inventory list filed by appellate counsel were not detailed enough, however, to confirm disclosure status with respect to every document," and that she was unsuccessful in her attempts to contact Sullivan's appellate counsel for further clarification. The government's brief does not dispute this.

We agree with Sullivan's counsel that the inventory lists are not sufficiently detailed to include every document she relies on, but it certainly includes some, specifically the documents regarding witnesses Mary Ann Vowels, Karen Fields, and Karen Gomes. Consequently, Sullivan has procedurally defaulted on any *Brady* claims concerning these documents because his appellate counsel, who had these documents, did not raise these claims on direct appeal.

**2.**

Sullivan's current counsel seeks to excuse this procedural default based on her assertion that Sullivan's appellate counsel was constitutionally ineffective, specifically for (1) including an ineffective-assistance-of-counsel claim even though such claims are generally not cognizable on direct appeal and (2) failing to include all of the potential *Brady* evidence, inasmuch as the court considers such evidence cumulatively so "there is no strategic upside, and all strategic downside, in failing to raise all arguments in support of a *Brady* claim." We cannot agree.

The decision of which among the possible claims to pursue on appeal is entrusted to counsel's professional judgment, which is presumed to be effective unless the ignored issues are clearly stronger than those presented.[8] *McFarland*, 356 F.3d at 710; *Joshua*, 341 F.3d at 441. Sullivan's first contention is that his current *Brady* claim was clearly stronger than the ineffective-assistance-of-trial-counsel claim, but that misses the point – it is not enough that the ignored claim was stronger than one of the claims actually presented; to overcome the presumption of effectiveness, the ignored claim must have been clearly stronger than all of those other claims that were actually presented. Moreover, Sullivan's contention is inapposite inasmuch as he did raise a *Brady* claim on direct appeal, albeit a different one, and is unpersuasive because we did not deny that ineffective-assistance claim on direct appeal, but deferred it to his § 2255 motion and he continues to press the legitimacy of that claim even here.

As for Sullivan's second contention – that counsel was ineffective for failing to raise *all* of the possible *Brady* evidence – that is unsupported by, and contradictory to, established law, which holds that "selecting," "winnowing," and "focusing" arguments "is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536; *Jones*, 463 U.S. at 751. We therefore decline Sullivan's proposition that counsel's failing to include *all* of the potential *Brady* evidence is necessarily ineffective assistance because the court considers such evidence cumulatively.

Sullivan cannot excuse his procedural default on this claim.

### 3.

As for the remainder of the documents allegedly withheld in violation of *Brady*, Sullivan raised those in his § 2255 motion, the magistrate judge rejected those claims in the R&R, and the

---

[8] Sullivan's appellate counsel raised five claims in his direct appeal: (1) a Sixth Amendment claim concerning his request to substitute counsel; (2) an insufficient-evidence claim concerning three of the robberies; (3) a claim that the photo lineup had been unduly suggestive; (4) a *Brady* claim concerning discarded fiber and hair samples and eyewitness interview forms; and (5) an ineffective-assistance-of-trial-counsel claim. We rejected the first four and declined to decide the ineffective-assistance claim. *Sullivan*, 431 F.3d at 978.

district court adopted the R&R, thereby rejecting those claims in its judgment. Because Sullivan did not file objections to the R&R, he waived his right to appeal. *See Walters*, 638 F.2d at 947.

Sullivan's current counsel contends that Sullivan's *pro se* motion to amend his § 2255 and to recall the R&R suffices as "objections," despite the fact that it raised no objections and instead merely announced that he had acquired new evidence which he intended to introduce. But, based on our thorough review of the R&R, the district court's judgments, and Sullivan's motions, we reject such a reading as unreasonable and wholly unsupportable. We also agree with the district court's findings that Sullivan had actual notice of the requirements, understood that he was to file objections but failed to do so, and was not reasonable in his alleged ignorance.

Finally, counsel urges us to excuse Sullivan's waiver because the district court reviewed the R&R "on the merits rather than resting on waiver." We do not agree that the district court reviewed these *Brady* claims on the merits, but even if it had, this is not the type of "exceptional circumstance" that would justify excusing compliance. *See*, *e.g.*, *Murphy*, 22 F. App'x at 391; *Souter*, 395 F.3d at 585; *Smith*, 505 F. App'x at 564; *Corsetti*, 41 F. App'x at 755.

Sullivan has waived appeal of the district court's denial of his *Brady* claims.

**4.**

Sullivan's current counsel has urged us to supplement the record and admit hundreds of pages of alleged *Brady* material that Sullivan obtained via FOIA. Because we find that Sullivan waived appeal of the district court's denial of his *Brady* claim, the substance of his requested supplement is irrelevant to disposition of this appeal, so we deny this motion as moot.[9]

---

[9] Counsel relies on *Thompson v. Bell*, 373 F.3d 688, 691 (6th Cir. 2005), *rev'd on other grounds by* 545 U.S. 794 (2005), for the proposition that we "have the inherent equitable power to supplement the record on appeal where the interests of justice require." Counsel noted that the Supreme Court reversed this opinion on other grounds, without reaching this particular proposition, but failed to mention that *Thompson* concerned a § 2254 habeas petition for relief from a state-court conviction, for which the Supreme Court has since rejected explicitly the possibility of supplementing the record in federal court. *See Cullen v. Pinholster*, 563 U.S. --, 131 S. Ct. 1388 (2011).

**5.**

At different points, both parties have moved for a remand to the district court for an evidentiary hearing. Under § 2255(b), an evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because Sullivan waived appeal of the district court's denial of his *Brady* claim, the substance of his requested supplemental material is irrelevant to disposition of his motion; he is conclusively entitled to no relief and we therefore deny these motions.

**6.**

When the government opposed Sullivan's motion to supplement the record, Sullivan requested that we treat his motions as alternatively seeking authorization to file a second or successive § 2255 motion based on his "newly discovered" evidence. We decline to do so.

First, "[a]ny claim that was presented in a prior § 2255 motion must be dismissed," *In re Liddell*, 722 F.3d at 738, and Sullivan's current counsel insists that "Sullivan has raised and

---

Given that *Pinholster*'s reasoning specifically addressed § 2254 proceedings, and thus it is not certain that it would apply in a § 2255 situation, this could theoretically remain a valid proposition. Therefore, it bears mention that counsel failed to note that *Thompson* – a highly unusual case to begin with – is the only opinion in the Sixth Circuit that holds this proposition and does so under drastically different circumstances than we have here:

> [W]e recognize that a number of our sister circuits have held that the courts of appeals have the inherent equitable power to supplement the record on appeal, where the interests of justice require. Although recent Sixth Circuit cases indicate that we have not yet embraced the notion that the record can be supplemented under an appellate court's equitable authority, in at least one earlier state habeas case we have so supplemented the record. Because [1] the evidence here was apparently negligently omitted, because [2] the evidence is so probative of Thompson's mental state at the time of the crime, because [3] there is no surprise to respondent as it was his counsel who took the deposition, and because [4] this is a capital case, we believe that the circumstances of this case merit consideration of the Sultan deposition pursuant to our equitable power to supplement the record on appeal. . . .

*Id*. at 690-91 (quotation marks and citations omitted). Obviously, the facts and circumstances in *Thomspon* are very different from those of this case, given that we have nothing in the present case comparable to the four unique facts enumerated in the above passage. Moreover, Thompson supplemented the record with a single piece of evidence (a psychiatrist's deposition) that was presumptively relevant and reliable without inquiry into its specific substance. Finally, it bears mention that the legal premise relied upon as support in the above passage (i.e., the earlier state habeas case) has now also been overruled by *Pinholster*, thus further undermining that reasoning.

Consequently, even if our disposition of the *Brady* claim on procedural grounds had not rendered moot the motion to supplement the record on appeal, we would decline to do so for lack of legal justification.

preserved one *Brady* claim: Deprivation of a fair trial due to the government's withholding of numerous exculpatory reports." If Sullivan has only one single *Brady* claim, which he raised in his first amended § 2255 motion, then we cannot grant a subsequent § 2255 motion on this same claim.

Moreover, Sullivan must show that his newly discovered evidence could not have been discovered earlier through the exercise of due diligence. *See United States v. Cottage*, 307 F.3d 494, 500 (6th Cir. 2002). The district court held that "Sullivan could have taken steps to procure this information earlier and, had he done so, could have presented this information to the court through his prior habeas filings or through filing an objection to the R & R." We agree and find that Sullivan has not made a sufficient showing that he is entitled to file another § 2255 motion.

## B. Motion to Amend the § 2255

In the appellate brief, Sullivan's current counsel argues that the district court erred by denying his motion(s) to amend his § 2255 motion. But our appellate review is limited to the issues specified in the COA. *See Dunham*, 486 F.3d at 934. On December 12, 2012, we granted Sullivan's motion to expand his COA to only those issues raised in his original § 2255 motion (September 24, 2007) and his first amended § 2255 motion (December 10, 2007). This necessarily excludes his additional motions to amend. Consequently, we reject this claim.

## C. Ineffective Assistance of Trial Counsel

In the appellate brief, Sullivan's current counsel argues five ways in which Sullivan's trial counsel rendered constitutionally ineffective assistance, claiming that he: (1) failed to find alibi witnesses; (2) failed to obtain government documents (the same documents underlying the *Brady* claim); (3) failed to investigate fingerprint evidence and improperly relied on his expert's opinion that there was nothing exculpatory therein; (4) failed to object to the magistrate judge's ruling on the photo array recommending denial of the motion to suppress eye witness

identification; and (5) failed to investigate the "bait bills" and their surrounding circumstances. She also argues that these failings constitute cumulative error when taken altogether.

**1.**

Counsel raises the fifth of these arguments – trial counsel's failure to investigate the "bait bills" – for the first time here on appeal; Sullivan did not raise it in his initial § 2255 motion or his first amended § 2255 motion. Our appellate review is limited to the issues specified in the COA. *See Dunham*, 486 F.3d at 934. Consequently, we will not consider this claim.

**2.**

Sullivan raised the first four arguments and the cumulative-error argument in his first amended § 2255 motion; the magistrate judge denied them in the R&R and the district court adopted the R&R, thereby rejecting those claims in its judgment. Because Sullivan did not file objections to the R&R, he waived his right to appeal. *See Walters*, 638 F.2d at 947.

For the same reasons set out previously with respect to the *Brady* claim, we reject the contention that Sullivan's motion to amend his § 2255 motion and to recall the R&R suffices as "objections." We also reject counsel's argument that we should excuse Sullivan's waiver.

Sullivan has waived appeal of the district court's denial of these claims.

**3.**

In the appellate brief, Sullivan's counsel claims that she has "at the least made sufficient factual allegations of deficient performance to require an evidentiary hearing." But, as with the *Brady* claims, because we find that Sullivan waived appeal of the district court's denial of these claims, he is conclusively entitled to no relief and therefore to no evidentiary hearing.

**4.**

Sullivan has elsewhere asserted that we should consider his motions as alternatively requesting authorization to file a second or successive § 2255 motion, presumably based on

18

"newly discovered" evidence. Because the first four arguments and the cumulative-error argument were raised in his prior § 2255 motion, we cannot grant a successive § 2255 motion on those. *See Liddell*, 722 F.3d at 738. As for the fifth argument (the "bait bill"), Sullivan has not shown that this could not have been discovered earlier through the exercise of due diligence. *See Cottage*, 307 F.3d at 500. Consequently, Sullivan is not entitled to file another § 2255 motion.

## D. Resentencing

Sullivan seeks resentencing because he was originally sentenced under the mandatory guidelines sentencing system that the Supreme Court declared unconstitutional in *United States v. Booker*, 543 U.S. 220 (2005). More importantly, the Supreme Court issued *Booker* while Sullivan's case was pending on direct appeal and, therefore, *Booker* applied to him. *Id*. at 268.

### 1.

The district court held that Sullivan's appellate counsel had procedurally defaulted on this claim for failing to raise it on direct appeal. This is both factually and legally correct – Sullivan procedurally defaulted this claim for purposes of § 2255 review. *See Peveler*, 269 F.3d at 693.

### 2.

Sullivan's current counsel argues – and the government agrees – that appellate counsel's failure to raise this claim on direct appeal was ineffective assistance of counsel sufficient to constitute cause and prejudice, and overcome procedural default. *See Bousley*, 523 U.S. at 622.

To prove ineffective assistance, Sullivan must show both deficient performance and prejudice, *see Strickland*, 466 U.S. at 687, and in assessing deficient performance, we "must take care not to second-guess [counsel's] strategic decisions," *Jackson v. Bradshaw*, 681 F.3d 753, 760 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 689) (quotation marks omitted). Recall that Sullivan's appellate counsel had also been his counsel for sentencing, during which he had successfully objected to the PSR's recommendation for an upward departure to account for the

seven robberies that were excluded from the mandatory guidelines calculations. In fact, counsel had concluded his written objection by asserting that the guideline-mandated "sentence is adequate." It is therefore possible that he omitted the resentencing claim from direct appeal as a strategic decision to avoid the possibility of reviving the threat of an upward departure at resentencing under a new advisory guidelines scheme. Or it could be that he decided to omit this claim (challenging a sentence that he considered "adequate") and focus on stronger arguments.

Nonetheless, we have held that counsel's failure to raise *Booker*'s change in federal sentencing law, while the case was on direct appeal, is objectively unreasonable. *Ballard v. United States*, 400 F.3d 404, 408-09 (6th Cir. 2005). Moreover, prejudice is presumed, *United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005), and rebutted in only rare cases, *United States v. Mooneyham*, 473 F.3d 280, 295 (6th Cir. 2007). Consequently, Sullivan's appellate counsel was ineffective and that ineffectiveness serves to overcome the procedural default.

Sullivan is entitled to re-sentencing under the advisory guideline scheme.

### III.

For the forgoing reasons, we DENY each of the motions raised here; we AFFIRM the judgments of the district court as to all aspects of Sullivan's conviction; we REVERSE the judgment of the district court that Sullivan procedurally defaulted his *Booker*-based sentencing claim; and we REMAND to the district court for resentencing consistent with this opinion.