RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JONATHON WILLIAM-DURAND NEUHARD,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

No. 22-2120

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:15-cr-20425-1; 2:20-cv-13119—Gershwin A. Drain, District Judge.

Decided and Filed:  October 25, 2024

Before:  SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  J. Vincent Aprile II, LYNCH, COX, GILMAN & GOODMAN, P.S.C., Louisville, Kentucky, John R. Minock, CRAMER, MINROCK & SWEENEY, Ann Arbor, Michigan, for Appellant.  Jessica Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

LARSEN, Circuit Judge.  A jury convicted Jonathon Neuhard of producing, receiving, and possessing child pornography.  A panel of this court affirmed his convictions.  Neuhard then sought to vacate his sentence under 28 U.S.C. § 2255, arguing ineffective assistance of trial and appellate counsel.  The district court denied the motion but granted Neuhard a certificate of appealability.  For the reasons outlined below, we AFFIRM.

I.

For years, Neuhard sexually assaulted his two minor nieces while babysitting them at their grandmother's house. The older girl, MV1, who was nine years old when the abuse began, described multiple occasions when Neuhard had shown her pornographic videos, molested her, and photographed her naked in her grandmother's basement.

After MV1's mother reported the abuse, law enforcement obtained a warrant, searched Neuhard's trailer, and seized a laptop and memory card which contained two downloaded videos of child pornography and four deleted images. Metadata revealed that the images had been taken at the grandmother's house using a cell phone of the same make and model as Neuhard's. MV1 identified herself as the naked minor in the deleted images and testified that Neuhard was the photographer.

Neuhard was indicted on counts of producing, receiving, and possessing child pornography in violation of 18 U.S.C. §§ 2251(a), 2252A2, and 2552A(5)(B). The district court appointed Richard Korn as Neuhard's trial counsel after prior counsel withdrew. When meeting with his client, Korn noticed that Neuhard exhibited awkward behaviors when answering questions. Korn also noticed that Neuhard had reacted in a flat, emotionless manner in his recorded police interrogation. So, Korn sought more information. He discussed the issue with prior counsel, Neuhard's parents, and Neuhard himself. Korn also considered the opinions of two expert examiners. One had already concluded that Neuhard had autism, whereas the other found that Neuhard presented an inconclusive case. Korn further reviewed all of Neuhard's school records, including medical records, and read books and articles on autism and sexual crimes. Korn concluded it was a "close call" but decided that introducing evidence of Neuhard's autism at trial would be more harmful than helpful. R. 200, PageID 1969–70. Korn worried that, regardless of what an expert might caution, the jury would view Neuhard as a mentally ill sexual deviant who lacked control over his impulses. So, he decided that he would introduce autism evidence only if "absolutely necessary." R. 200, PageID 1959–60; R. 184-2, PageID 1766.

Korn laid out the defense's theory in his opening statement to the jury: three other individuals who lived at or frequented the grandmother's house had committed the crimes alleged. During the government's case, Agent Lisa Keith testified that she had interviewed Neuhard as well as these three other men. When asked by the prosecution about the other three's demeanor, Keith said that "[t]hey were cooperative, helpful, offered to take lie detector tests . . . ." R. 126, PageID 981. Korn immediately asked for a sidebar and objected to the reference to polygraph tests because it breached a pretrial agreement the parties had negotiated not to introduce such evidence.

During the sidebar, the government admitted error and supported a curative instruction. Korn noted the likely inadvertent nature of the comment and suggested remedying the error by introducing evidence that Neuhard had also offered to take a polygraph. (Neuhard had originally offered to take a polygraph while unrepresented, but Korn had later withdrawn that offer.) The court opted for the government's remedy, struck the remark from the record, and admonished the jury twice not to consider Keith's testimony "about other people offering to go take a polygraph." R. 126, PageID 982–85.

After the government rested, Korn moved for a mistrial, arguing that the instruction was insufficient to remedy the damage done. Keith's comment, Korn argued, completely undermined his theory of the case. If the court disagreed about a mistrial, Korn asked the court to at least permit him to introduce Neuhard's offer to take a polygraph to balance the bias caused by the comment. The court denied both requests but offered to reiterate its jury instruction. Korn declined the offer to avoid further highlighting the polygraph comment for the jury. The jury convicted Neuhard on all three charges.

Neuhard obtained new counsel, who raised six issues on appeal. *See United States v. Neuhard*, 770 F. App'x 251, 252–59 (6th Cir. 2019). This court affirmed, rejecting several arguments relevant to this appeal. Specifically, we held that the district court had not abused its discretion in rejecting Neuhard's polygraph offer and instead giving a limiting instruction, and that the alleged cumulative errors did not "warrant a retrial." *Id.* at 255–56.

Neuhard then pursued habeas relief under § 2255.  He argued that Korn had performed deficiently by failing to adequately investigate and present evidence of his autism at trial and failing to immediately request an evidentiary hearing to determine whether Keith had intentionally mentioned a polygraph.  Neuhard also argued that his appellate counsel had performed deficiently by failing to appeal the denial of his mistrial motion.  After holding an evidentiary hearing, the district court denied habeas relief but granted Neuhard's motion for a certificate of appealability on these three issues.

## II.

We review a district court's decision denying habeas relief under § 2255 de novo and its factual findings for clear error.  *Greer v. United States*, 938 F.3d 766, 770 (6th Cir. 2019).  To prevail on an ineffective assistance claim, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  This "is a most deferential standard even under *de novo* review."  *Kendrick v. Parris*, 989 F.3d 459, 468 (6th Cir. 2021) (cleaned up) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).  To prove that counsel's "[r]epresentation [was] constitutionally ineffective," a defendant must show that "it so undermined the proper functioning of the adversarial process that [he] was denied a fair trial." *Id.* at 470 (citation and quotation omitted).  Courts also "must make 'every effort' to 'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Id.* at 468 (quoting *Strickland*, 466 U.S. at 689).

## A.

Neuhard first contends that Korn performed deficiently by failing to sufficiently investigate and present expert evidence concerning Neuhard's autism.  We disagree.

An attorney making a strategic decision must adequately "investigate his [or her] options and make a reasonable choice between them."  *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  A strategy is reasonable if it falls "within the range of logical choices an ordinarily

competent attorney . . . would assess as reasonable to achieve a specific goal." *Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001) (quotation omitted). *Strickland* demands "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. And "the range of reasonable applications is substantial" and "wide." *Kendrick*, 989 F.3d at 468 (quoting *Harrington*, 562 U.S. at 105).

The record shows that Korn adequately investigated Neuhard's autism and developed a reasonable strategy not to introduce autism evidence at trial. Neither party argues that producing evidence of autism would have been a defense to liability. Instead, any value from presenting such evidence would have been to explain Neuhard's atypical demeanor. Korn immediately noticed Neuhard's "unusually slow," "rigid," and "awkward" responses to his questions and, after reviewing Neuhard's interrogation recordings several times, became aware of his flat affect. R. 184-2, PageID 1765–66; R. 200, PageID 1957–58, 1966. Korn's concern was that a jury might infer guilt from Neuhard's emotionless response to police questioning.

Korn took reasonable steps to investigate this issue. He consulted with prior counsel and had several discussions with Neuhard's parents. He reached out to prior counsel's expert witness who had diagnosed Neuhard with autism. He also contacted a second psychologist who had previously evaluated Neuhard but found it inconclusive whether Neuhard had autism. Counsel also obtained all Neuhard's school records including his psychological assessments, though they contained "no mention of autism." R. 184-2, PageID 1766, R. 200, PageID 1958. Still, Korn "accepted the fact that [Neuhard] was autistic," and he researched the relationship between "autism and criminal sexual conduct cases" by reviewing relevant books and articles. R. 200, PageID 1964; R. 184-2, PageID 1766.

Based on this evidence, Korn, after several consultations with Neuhard, decided that presenting autism evidence entailed "the risk that the jury would perceive him as a mentally ill 'monster' who could not control his impulses to sexually abuse children." R. 184-2, PageID 1766–67. Korn took into account that "an expert would testify that such a conclusion is not valid," but thought that such caution would "not matter" to a jury. *Id.* at 1767. The risk, counsel concluded, "outweighed" any benefit to be gained. *Id.* at 1766. This strategic decision, based on sufficient investigation, fell well within the range of reasonable representation.

Nothing at trial suggested Korn should have changed course. In Korn's experience, Neuhard's awkwardness displayed itself only during conversation, and Korn knew that Neuhard had elected not to testify. During the proceedings, Neuhard sat at counsel table and "comported himself well, took notes during the testimony, and consulted with trial counsel in an appropriately subdued manner." R. 184-2, PageID 1767. The only negative evidence of Neuhard's comportment consisted of his unemotional demeanor during the six-minute interrogation recordings and the interviewing agent's testimony that he perceived Neuhard as "robotic," "reserved," "unemotional," and "short." R. 125, PageID 840–42. After hearing this testimony, Korn again considered whether he should put on an expert to explain the potential cause of Neuhard's demeanor but determined that calling an expert would only highlight Neuhard's atypical mannerisms for the jury. Drawing attention to the issue, Korn reasoned, would likely do more harm than good. And Korn deployed other tactics to combat the agent's testimony. He carefully cross-examined the agent, attacking his credibility, highlighting Neuhard's cooperativeness, and reiterating all of this in his closing statement. Korn's decision not to introduce autism evidence was thus well within the range of reasonable representation.

Neuhard's arguments to the contrary are unavailing. He argues that Korn should have done more research. For example, he says Korn should have consulted more sources, such as the National Autism Association, to learn how to present autism evidence. But counsel did research this issue and made the professional judgment that it would not be in his client's best interest to present autism evidence. "The test for ineffectiveness is not whether counsel could have done more;" it is merely whether counsel did enough. *Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995).

Neuhard suggests that it should have been obvious to Korn that he needed to perform more research and introduce autism evidence because a new expert report, commissioned in conjunction with habeas proceedings, concluded that Neuhard was more seriously affected by autism than the prior experts had opined. Indeed, the post-trial expert said that Neuhard functioned in many ways like a ten-year-old child without autism. Neuhard does not clearly explain why having a more-severe diagnosis would have mattered. But, in any event, "simply introducing the contrary opinion of another mental health expert during habeas review is not

sufficient to demonstrate the ineffectiveness of trial counsel." *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 758 (6th Cir. 2013); *see also Black v. Bell*, 664 F.3d 81, 105 (6th Cir. 2011). The question is whether record evidence supports the conclusion that Korn "should have been aware at the time of [Neuhard's] trial" that additional investigation would produce more favorable evidence than the previous experts had provided. *Black*, 664 F.3d at 105 (emphasis omitted). No such evidence exists here. Korn interacted with Neuhard personally, consulted with his parents, obtained his school records, which did not mention autism, and consulted two experts. One expert diagnosed him with autism but the other could not confidently conclude, based on "borderline" test results, that Neuhard met the requirements for an autism diagnosis. R. 200, PageID 1964. Counsel still accepted that Neuhard was autistic but had no reason to suspect that yet another expert would provide a more severe diagnosis.[1] *See Mammone v. Jenkins*, 49 F.4th 1026, 1052 (6th Cir. 2022). Korn's investigation was reasonable.

Neuhard next says that counsel should have prepared materials regarding Neuhard's autism in case the need to present them arose at trial. But counsel is not ineffective for failing to prepare for eventualities that do not materialize. This argument, in other words, is just another way of asking whether counsel reasonably assessed the need to introduce expert testimony before and during trial. As explained above, the answer is "yes."

In sum, Neuhard's claim fails on *Strickland*'s first prong because Korn acted reasonably when investigating Neuhard's autism and deciding not to introduce autism evidence at trial.

### B.

Neuhard next contends that Korn provided ineffective assistance by not requesting "an immediate evidentiary hearing" to determine whether Agent Keith acted deliberately when she testified concerning polygraphs. We again disagree.

Here, Neuhard fails on the prejudice prong, so we need not consider deficient performance. *Smith v. Mitchell*, 348 F.3d 177, 199–200 (6th Cir. 2003). Under *Strickland*'s prejudice prong, Neuhard must show that "[t]he likelihood of a different result" absent Korn's

---

[1]Indeed, it bears mentioning that an additional expert, retained before sentencing, described Neuhard's autism as "mild." R. 200, PageID 1882.

error was "substantial, not just conceivable." *Harrington*, 562 U.S. at 112. He doesn't. Instead, as the district court correctly explained, he speculates that, had Korn sought an evidentiary hearing, he would have uncovered malfeasance by the prosecution and the court would have granted a mistrial on that basis. *See United States v. Neuhard*, 2022 WL 10613160, at \*5–6 (E.D. Mich. Oct. 18, 2022). The evidence suggests otherwise.

The parties disagree about the legal standard governing a district court's decision to grant a mistrial. The government says that, when the issue is improper reference to a polygraph, a mistrial is proper when an inference about the polygraph result was essential to assessing the credibility of a critical witness. *See United States v. Walton*, 908 F.2d 1289, 1293 (6th Cir. 1990). Neuhard says that *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003), applies instead. *Zuern* held that when determining whether an improper reference to inadmissible evidence merits a mistrial, courts should consider "(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant." *Id.* We need not resolve this dispute because Neuhard cannot show a reasonable probability that the district court would have granted a mistrial here, even under Neuhard's preferred test.

To begin, the prosecution did not solicit Agent Keith's polygraph testimony. Neuhard's brief admits as much. After an instruction from the trial court not to discuss hearsay, the prosecution asked Keith about the three other suspects' "attitude, the demeanor, how they presented to you as a federal agent asking them questions?" R. 126, PageID 980–81. In response, Keith testified that the three were "cooperative, helpful, offered to take lie detector tests." *Id.* at 981. Korn immediately asked for a sidebar. He objected to the polygraph testimony; the government admitted error; and Korn asked for permission to introduce evidence that Neuhard had also offered to take a polygraph. The government's question, which asked only about demeanor, cannot be construed as soliciting testimony concerning polygraph offers.

The prosecution's questioning was also reasonable. The defense focused on the other potential perpetrators who had access to Neuhard's phone and laptop. By asking about their demeanor under questioning, the government sought relevant evidence aimed at rebutting the

defense's principal theory.  *Cf. Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002) (holding evidence concerning other suspects was relevant).

The district court also issued an immediate, clear, and forceful jury instruction.  As soon as the sidebar ended, the court instructed the jury that:

> the reference here through the witness about other people offering to go take a polygraph is something that should not have come in and so I'm going to order that that be stricken, and so it's something you cannot consider when you discuss the case and deliberate on the case.  So that testimony about other people offering to take a polygraph is to be stricken and not considered by you.

R. 126, PageID 984–85.  The court issued this instruction before the presentation of further evidence and the directive made clear to jurors they could not consider the polygraph comments.  And "[j]urors are presumed to follow instructions."  *United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011).  *See also Neuhard*, 770 F. App'x at 255 (holding on direct appeal that the district court acted within its discretion by giving this instruction).

The record, furthermore, reveals no grounds on which to upset the district court's determination that the government did not deliberately introduce the polygraph evidence.  Neuhard argued in the evidentiary hearing on the § 2255 motion that Keith's mention of the polygraphs could not have been inadvertent.  After all, the prosecutor had told her not to mention them and the court had just instructed her not to recount hearsay.  *See Neuhard*, 2022 WL 10613160 at *6.  But Keith testified that, despite her experience as an agent, Neuhard's trial was her first time testifying, that she mistakenly made the polygraph remark, and that she immediately felt "like an idiot" afterward.  R. 197, PageID 1864; R. 200, PageID 1978–79.  The court found Keith's explanation credible and we "give great deference to the district court's credibility determinations."  *United States v. Prigmore*, 15 F.4th 768, 777 (6th Cir. 2021) (quotations and citation omitted).  Neuhard points to no other evidence that the polygraph testimony was intentional.  We thus defer to the district court's credibility determination in favor of the government.

Finally, the remark was, at best, "only a small part of the evidence against the defendant."  *Zuern*, 336 F.3d at 485.  The credibility of the three men who offered to take polygraphs was not vital to the case.  As the court explained, these three lived in and had access to the home between

2012 and 2013. Yet, whoever took the child pornography pictures did so in January 2014. *Neuhard*, 2022 WL 10613160, at *6. Moreover, MV1 testified that Neuhard took the pictures while molesting her in her grandmother's basement. *Id.* The pictures' metadata confirmed her testimony, showing that they were taken at the grandmother's house by a Samsung phone identical to Neuhard's. And police found the laptop and memory card containing these images—alongside other downloaded child pornography videos—in Neuhard's trailer.

In sum, Neuhard has not demonstrated a reasonable probability that the district court would have granted a mistrial had Korn immediately requested an evidentiary hearing after the polygraph comments. So, he has not shown prejudice as required by *Strickland*.

C.

Finally, Neuhard contests appellate counsel's performance, arguing that she should have appealed the denial of the mistrial motion based on bias from the polygraph evidence, rather than appealing the court's ruling refusing to introduce Neuhard's polygraph offer. Once more, we disagree.

At the outset, Neuhard's presentation of the issues suggests that his direct appeal had only two possible claims. That's hardly the case. Neuhard's appellate counsel actually raised six sophisticated arguments on appeal, including a Fourth Amendment challenge to the search warrant, a prosecutorial misconduct challenge to closing arguments, a sentencing enhancement challenge concerning Neuhard's state law convictions, a challenge to the causation standards for restitution, and an overall cumulative error challenge. Brief for Appellant at ii–iii, *Neuhard*, 770 F. App'x 251 (Mem.). She is not at fault merely for not raising a seventh. *See* Ruggerio Aldisert, Winning on Appeal 129 (2d ed. 2003) ("The most important decision you make in writing a brief is to limit the issues to about three, no more."). Indeed, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Hand v. Houk*, 871 F.3d 390, 410 (6th Cir. 2017) (same). So appellate counsel fails the performance prong only when the "ignored issues are clearly stronger than those presented." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Robbins*, 528 U.S. at 259).

To meet this standard, "it is not enough that the ignored claim was stronger than one of the claims actually presented; to overcome the presumption of effectiveness, the ignored claim must have been stronger than all of those other claims that were actually presented." *Sullivan v. United States*, 587 F. App'x 935, 944–45 (6th Cir. 2014); *see also Houston v. Phillips*, 2022 WL 3371349, at *4 n.3 (6th Cir. Aug. 16, 2022) ("Houston does not argue that this defaulted claim was 'clearly stronger' than the twelve other ineffective-assistance claims that his postconviction counsel did raise"); *Hutton v. Mitchell*, 839 F.3d 486, 501 (6th Cir. 2016) (comparing two omitted claims to the five claims raised on appeal), *rev'd on other grounds*, 582 U.S. 280 (2017); *Mapes v. Tate*, 388 F.3d 187, 192 (6th Cir. 2004) (comparing the omitted issue to the twelve assignments of error raised on appeal).  The government does not raise this argument, however, so we do not reject Neuhard's arguments on this basis.

Focusing just on the two issues Neuhard has selected, we disagree that the mistrial denial provided grounds for appeal that were "clearly stronger" than the polygraph issue.  A court can admit evidence that a party offered to take a polygraph if the evidence is relevant and the risk of unfair prejudice or jury confusion does not outweigh its probative value. *United States v. Harris*, 9 F.3d 493, 501–02 (6th Cir. 1993).  Neuhard's appellate counsel advanced colorable arguments that his uncounseled offer to take a polygraph showed that he lacked knowledge of the child pornography on his devices, even though counsel later withdrew that offer.  Brief for Appellant at 41, *Neuhard*, 770 F. App'x 251 (Mem.).  Appellate counsel also argued that, since the government first breached the agreement not to introduce polygraph information, admitting evidence that Neuhard offered to take a polygraph examination would not have resulted in prejudice to either party because the damage was done. *Id*. at 41–42.  These were reasonable arguments to make on appeal.

Neuhard's mistrial claim, meanwhile, had little chance of success on appeal.  As we explained above, even applying Neuhard's preferred test, *Zuern*, 336 F.3d at 485, Neuhard fails each of its prongs. *See supra* II.2.  We can't say that this claim was "clearly stronger" than the one counsel raised.

Neuhard resists this conclusion, pointing to this court's reasoning rejecting his appeal. *See Neuhard*, 770 F. App'x at 255.  But Neuhard relies exclusively on information that arose

*after* his appellate counsel made her strategic decisions to argue that those decisions were unreasonable.  As the Supreme Court has explained, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  "Once we eliminate the distorting effects of hindsight," Neuhard cannot "overcome the presumption that" his appellate counsel provided adequate representation.  *Kendrick*, 989 F.3d at 474.

In sum, Neuhard's appellate counsel did not perform inadequately by failing to raise the mistrial issue on appeal.

* * *

We AFFIRM the district court's denial of Neuhard's § 2255 habeas motion.